## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

MICHAEL LYNN JONES                                                                PLAINTIFF

v.                                          Case No. 4:08CV00159

ARKANSAS DEPARTMENT OF WORKFORCE
SERVICES                                                                          DEFENDANT

### OPINION AND ORDER

Michael Lynn Jones filed this action against the Arkansas Department of Workforce Services alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Jones's employment was terminated on June 21, 2007, and he contends that he was terminated because he is an African-American. In addition to reinstatement, he is seeking injunctive orders, damages, costs, and attorney's fees. Workforce Services filed a motion for summary judgment, and Jones has responded. For the following reasons, Workforce Services' motion for summary judgment is denied.

### I.

A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden,

"the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting Fed. R. Civ. P. 56(e)).  A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511.  In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences.  *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases).  *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

## II.

Jones, an African-American, began work on September 15, 2006, as an intermittent general maintenance worker with the Arkansas Department of Workforce Services.  He was terminated on June 20, 2007.  Jones was initially told that he was being terminated because of several sexual harassment complaints that had been made against him, but the ultimate reason given for his termination was lack of work.  After filing a complaint with the EEOC, Jones was sent a notice of right to sue letter on December 21, 2007.  Jones then filed suit in federal court on February 22, 2008, alleging violation of his Title VII rights.

Several Workforce Services employees have stated that Jones behaved inappropriately toward female employees throughout the course of his employment.  Cara Benton, a research analyst, states that Jones continually harassed her and made inappropriate advances toward her, even after she indicated that his behavior was unwelcome and inappropriate.  John Krstolic, a database analyst,

2

states that several female employees complained to him of inappropriate and vulgar comments Jones made toward female employees, and on one occasion Krstolic overheard Jones make an inappropriate and sexually suggestive comment to a female employee.  Finally, James Grant, the maintenance supervisor, states that he heard Jones make an inappropriate comment toward a female employee on June 18, 2007.  Grant says that he counseled Jones on the inappropriateness of his behavior in the workplace.

On June 20, 2007, Workforce Services Deputy Director Ron Snead informed the Director, Artee Williams, also an African-American, of the sexual harassment complaints that had been made against Jones.  Williams instructed Snead to terminate Jones immediately, and Snead told Grant to terminate Jones the next morning.

On June 21, 2007 Grant informed Jones that Workforce Services was terminating him due to the sexual harassment complaints.  Jones says that he then asked Grant for proof of the allegations, but Jones never received evidence of the nature of the sexual harassment allegations.  Grant then spoke with Roscoe Hillard, an African-American and the Workforce Services personnel director, about the procedure for terminating Jones.  Hillard says that he told Grant that Jones could be terminated for any reason, such as lack of work, because he was an at-will employee.  Upon returning to the maintenance office, Grant told Jones that he was being discharged for lack of work. Grant states that his intent in discharging Jones for lack of work, rather than for the sexual harassment complaints, was to help Jones avoid the embarrassment of the allegations and remain eligible for unemployment benefits.  Jones asked Grant about the sexual harassment charges, but Grant did not provide any additional information.

## III.

In analyzing an employment discrimination claim based on race, the Court uses the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The plaintiff must first establish a prima facie case of race discrimination. *Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1071 (8th Cir. 1998). Upon establishment of a prima facie case, the burden shifts to the defendant to rebut the presumption, and the defendant must articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1021 (8th Cir. 1998). If the defendant is able to articulate a legitimate, nondiscriminatory reason, then the plaintiff must show that the proffered reason is merely a pretext for intentional discrimination. *Rose-Maston v. NME Hosp., Inc.*, 133 F.3d 1104, 1107 (8th Cir. 1998).

Normally, a plaintiff must show a prima facie case by demonstrating that (1) he is a member of a protected class; (2) he was qualified to perform his job or was meeting his employer's legitimate job expectations; (3) he was terminated; and (4) was treated differently than other similarly-situated persons outside of his protected class. *See Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005); *Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). However, the Supreme Court has recognized that the prima facie case necessarily varies based on the factual circumstances. *McDonnell Douglas*, 411 U.S. at 802 n.13, 93 S. Ct. at 1824; *Warner-Jenkinson Co., Inc.*, 152 F.3d at 1022. The necessary level of proof is not inflexible and varies with the specific facts of each case. *Warner-Jenkinson Co., Inc.*, 152 F.3d at 1022 (quoting *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990–91 (8th Cir. 1998)). To satisfy the usual fourth element of a prima facie case—that the plaintiff

was treated differently than other similarly-situated comparators—a plaintiff may also demonstrate that the facts surrounding his termination permit an inference of discrimination. *Zhuang*, 414 F.3d at 854.

Here, Jones has presented evidence that gives rise to an inference of discrimination. Workforce Services provided Jones with no proof of the sexual harassment allegations at the time of his termination.  After stating that he was being terminated for sexual harassment, Workforce Services then changed the reason for his termination to lack of work.  Workforce Services states that the underlying intent of the change was to prevent unnecessary embarrassment and allow Jones to receive unemployment benefits.  Jones argues that he was treated differently than other members of the maintenance staff.  He states that he was the only maintenance employee not entrusted with a set of keys.  He also states that although he was discharged for lack of work, Workforce Services gave full time employment to a white maintenance employee, Paul Harrell, while Jones was with the maintenance department.  Finally, Jones states that Workforce Services employees made comments implying that African-American maintenance employees did not remain for very long.  Workforce Services admits that it changed the reason for Jones's termination and that lack of work was not an accurate reason for his termination.  In addition to the changed reason for his termination, Jones has presented some evidence that he was treated differently due to his race.  Therefore, the circumstances surrounding Jones's discharge present an issue of fact as to whether Workforce Services' termination of Jones was based on his race.  *See Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005) (stating that a plaintiff alleging disparate treatment must show (1) membership of a protected class; (2) that he was qualified and performed his duties adequately; (3) that he suffered an adverse employment action; and (4) that the circumstances surrounding the adverse employment action

permit an inference of unlawful discrimination); *Griffin v. City of Omaha*, 785 F.2d 620, 625 (8th Cir. 1986) ("Proof of disparate treatment under Title VII follows a well-established pattern. The plaintiff initially must establish a prima facie case by proving facts sufficient to give rise to an inference of discrimination.").

Workforce Services has presented a legitimate, nondiscriminatory reason for its actions: by terminating Jones for lack of work, it was attempting to save Jones the embarrassment of sexual harassment allegations and allow him to receive unemployment benefits. Although Workforce Services has offered employees' affidavits alleging that Jones sexually harassed female employees, Jones disputes those allegations and states that he did not sexually harass female employees, meaning that there is a disputed issue of fact with regard to the sexual harassment allegations. The same evidence that permits an inference of discrimination sufficient to establish a prima facie case also creates an issue of fact as to whether Workforce Services' articulated reason is a mere pretext. *Arnold v. Nursing and Rehab. Ctr. at Good Shepherd, LLC*, 471 F.3d 843, 847 (8th Cir. 2006) (stating that pretext may be established by showing that the employer made substantial changes in its proffered reason for an employment decision) (citing *Kobrin v. Univ. of Minn.*, 34 F.3d 698 (8th Cir. 1994)); *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002) (stating that a plaintiff can prove pretext if the evidence "(1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [race] was a determinative factor in the adverse employment decision.") (quoting *Rothmeier v. Investment Advisers, Inc.*, 85 F.3d 1328, 1336–37 (8th Cir. 1996)). Grant's intent in changing the reason for discharge may have been reasonable, and there may have been an honest miscommunication between Hillard and Grant as to the proper procedure for terminating Jones. However, when viewed in light of the circumstances

surrounding his discharge and other evidence proffered by Jones—the failure to present Jones with evidence of sexual harassment allegations at the time of his termination; Jones's denial of the harassment allegations; the promotion of a white maintenance worker to full-time status; that the only African-American maintenance employee, Jones, was also the only maintenance employee not to receive a set of keys; that other employees commented on the reputation of the maintenance department as one in which African-Americans did not last long; and the changing explanation for Jones's termination—there is a genuine issue of material fact as to whether Workforce Services' articulated reason is mere pretext.

## CONCLUSION

Jones has alleged that he was terminated by the Arkansas Department of Workforce Services because he is an African-American. Jones has demonstrated a prima facie case of discrimination because the circumstances surrounding his discharge give rise to an inference of discrimination. Although Workforce Services has stated a legitimate, nondiscriminatory reason for the adverse employment action, Jones's proffered evidence and the context of his termination also create a fact issue as to whether Workforce Services' stated reason is genuine or a mere pretext. Therefore, because there is a genuine issue of material fact regarding whether Jones suffered an adverse employment action because of his race, Workforce Services' motion for summary judgment is DENIED (Docket #30).

IT IS SO ORDERED this 25th day of February, 2009.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE